IN THE UNITED STATES DISTRICT COURT FILED
FOR THE NORTHERN DISTRICT OF ALABAMA AUG 17 AM 11:02
EASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

MS DEALER SERVICE }
CORPORATION,       }
                   }
    Plaintiff      }   CIVIL ACTION NO.        Cho
                   }
    vs.            }   98-AR-1321-E
                   }
SHARON D. FRANKLIN, }                      ENTERED
                   }
    Defendant      }                       AUG 17 1998

## MEMORANDUM OPINION

This court has for consideration the motion by defendant, Sharon D. Franklin ("Franklin"), to reconsider this court's order and opinion of July 28, 1998, which, as of now, would compel arbitration of the controversy between Franklin and plaintiff, MS Dealer Service Corporation ("MS Dealer"), unless a petition for certiorari is filed and a stay obtained on or before August 18, 1998, in *First Franklin Financial Corp. v. McCollum*, No. 97-6966, ___ F.3d ___, 1998 WL 347142 (11th Cir. June 8, 1998). *Franklin Financial* is the Eleventh Circuit's most recent opinion on a federal court's power to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* After July 28, 1998, the parties in *First Franklin* reached a settlement, eliminating the possibility of a petition for certiorari.

This court was mistaken in proposing to wait to see what, if anything, the Supreme Court would do in *First Franklin*. This court was incorrect in assuming that First Franklin would be

1

controlling in this case, because the only feature this case and *First Franklin* have in common is that in both cases a plaintiff asked a federal court to compel the arbitration of an issue pending in a prior pending state court proceeding. This court denied the relief sought by First Franklin on an abstention theory. This court will deny MS Dealer's request for compulsory arbitration, even though reversed in *First Franklin*, because the cases are different in a crucial respect.

This case is distinguishable from *First Franklin* by the central fact this court did not note in its opinion of July 28, 1998. Plaintiff here, MS Dealer, as distinguished from First Franklin, is not a signatory to the contract that contains the applicable arbitration clause. This court now agrees with the current defendant that this fact is more than enough to distinguish MS Dealer's standing from that of First Franklin.

This dispute began with an automobile purchase agreement between Franklin and Jim Burke Motors, Inc. ("Burke"), which is a defendant, along with MS Dealer, in a lawsuit filed by Franklin in state court. In the state court suit, Franklin alleges, *inter alia*, that MS Dealer <u>and</u> Burke violated § 5-19-19, Ala. Code, part of the Alabama Consumer Credit Act, and that they committed fraud and civil conspiracy when they sold her an automobile

2

service agreement for which she was charged an excessive fee and which contained excessive interest charges. <u>The service contract between MS Dealer and Franklin does not contain an arbitration clause</u>. (*See* MS Dealer Reply Br. (Doc. 6), Ex. B.) The cost of the service agreement was included in the automobile "retail installment contract" by and between Franklin and Burke. *See id.* at Ex. C  This document is incorporated by reference into a "Buyer's Order," [1] which contains the following arbitration clause:

> BUYER HEREBY ACKNOWLEDGES AND AGREES THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN <u>BUYER AND JIM BURKE MOTORS, INC</u>. ARISING OUT OF OR IN CONNECTION WITH THE PURCHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION ....
>
> All disputes and controversies of every kind and nature <u>between the parties</u> hereto arising out of or in connection with this contract ... shall be submitted to binding arbitration pursuant to the provision of the Federal Arbitration Act ....

*See id.*, Ex. A. (emphasis supplied). MS Dealer asks this court to compel the arbitration of the underlying state law action between MS Dealer and Franklin, pursuant to this arbitration provision in the agreement between Burke and Franklin. The Federal Arbitration Act does not cast its net so broadly.

---

[1] The "Buyer's Order" contains a paragraph that states the sales contract consists of, *inter alia*, the "Buyer's Order," and the "retail sales contract and security agreement." *See id.* at last para. Presumably, the "retail installment contract," which Franklin signed is the equivalent of the "sales contract and security agreement" referred to in the "Buyer's Order."

3

The rule that a person or entity who is not a party to a contract has no standing to enforce the contract applies equally to contracts that contain an arbitration clause. See *General Commodities Corp. v. Hyman-Michaels Co.*, 224 F.2d 952 (9th Cir. 1955); *Fisser v. International Bank*, 282 F.2d 231 (2d Cir. 1960); *General Atomic Co. v. Duke Power Co.*, 420 F. Supp. 215 (W.D.N.C. 1976).

*Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1429 (M.D. Ala. 1997) recognizes that a non-signatory may compel arbitration only *if* the contract containing the arbitration clause so provides. *Boyd* is a very well thought out opinion by Judge Thompson. It provides MS Dealer no basis for standing to enforce this particular arbitration clause because it takes too great a stretch of the imagination to embrace MS Dealer as a third-party beneficiary.

In most cases, the question is whether the contract on its face affords arbitration rights to non-signatories. The contract involved here solely requires arbitration of disputes "between Buyer and Jim Burke Motors, Inc." Clearly it does not call for arbitration of disputes between the Buyer and third-parties. MS Dealer has no basis on these facts and proceedings for reliance on the language of this arbitration provision. *See Boyd*, 981 F. Supp. at 1430 (holding that a non-signatory cannot compel

4

arbitration where the arbitration provision "expressly limits its purview to disputes 'between or among' the signatories.")

MS Dealer hopefully insists that what it describes as a "broad" arbitration provision encompasses its dispute with Franklin. Presumably, MS Dealer relies on that portion of the arbitration provision that requires arbitration of "all disputes and controversies of every kind and nature ..." However, such selective reliance does not diminish the effect of the language limiting arbitration to disputes <u>between the buyer and the dealer</u>. To subscribe to MS Dealer's interpretation would extend the clause to ridiculous lengths.

MS Dealer also relies on *McBro Planning & Development Co. v. Triangle Electrical Constr. Co.*, 741 F.2d 342 (11th Cir. 1984)(cited with approval in *Ex Parte Isbell,* 708 So. 2d 571, 575-79 (Ala. 1997)), in support of a right to compel arbitration. Nothing said in *McBro* necessitates agreement with MS Dealer. In *McBro*, the Eleventh Circuit found that the plaintiff, Triangle Electrical, was equitably estopped from asserting the absence of a written agreement as a defense to McBro's petition to compel arbitration. 741 F.2d at 344. McBro served as the "construction manager" on a hospital renovation project where Triangle provided electrical services. *Id.* at 343. Both McBro and Triangle had

5

contracts with the hospital containing provisions that required arbitration of disputes between the "parties." No contract existed between McBro and Triangle, but McBro sought to compel arbitration when Triangle sued asserting third-party beneficiary claims, intentional interference with contract and negligence. The Eleventh Circuit upheld the district court's order of arbitration for several reasons. First, there was a close relationship between the involved entities: Triangle, McBro and the hospital. *Id.* at 343. More importantly, a "close relationship" existed between the alleged wrongs committed by McBro and the duties imposed upon McBro by virtue of its contract with the hospital. *Id.* Indeed, "the very basis of the contractor's claim against the construction manager was that the manger breached the duties and responsibilities assigned by the owner-contractor agreement.... [T]he contractor's claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 344. Thus, it was logical that the contractor, Triangle, be equitably estopped from relying on the absence of a contract between it and McBro as a defense to the petition to compel arbitration.

In the present case, Franklin's claims against MS Dealer are not grounded on any alleged breach of the sales agreement between Franklin and Burke. Although there may be a close relationship

6

between the parties, Franklin's claims are not "intimately founded in and intertwined with the underlying sales contract obligations." *See Id.* Franklins' claims against MS Dealer are for conspiracy, fraud, and violation of the Alabama Consumer Credit Act. Although related to the sales contract, they are not "intertwined" with the <u>contractual obligations</u> imposed by the sales contract. Indeed, the automobile <u>sales</u> contract does not impose <u>any</u> contractual obligations upon MS Dealer. MS Dealer's obligations to Franklin exist solely by virtue of its <u>service</u> agreement, which was not incorporated by reference into the <u>sales</u> contract containing the arbitration provision. Accordingly, MS Dealer cannot rely on the *McBro* equitable estoppel theory to support its mandatory arbitration claim.

Finally, the court notes that in *McBro* the Eleventh Circuit cited to *Hughes Masonry v. Greater Clark County Sch. Bld.*, 659 F.2d 836 (7th Cir. 1981), in support of the equitable estoppel theory. The court in *Hughes* found that the plaintiff was equitably estopped from disclaiming application of the arbitration provision in a third-party contract while at the same time suing over the defendant's failure to perform duties created under the provisions of the same contract. In the present case, Franklin is not disclaiming application of the arbitration provision while attempting to gain, from MS Dealer, the benefit

7

of the bargain she made with Burke. The facts in the present case simply do not support application of the equitable estoppel analysis.

Franklin's motion to reconsider will be granted, the memorandum opinion and order of July 28, 1998, will be vacated, and Franklin's motion to dismiss will be granted.

If Burke invokes the arbitration agreement in defense of Franklin's state court action, this court expresses no opinion as to what the state court should do. That will be a problem for the state court.

DONE this 17th day of August, 1998.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE